UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**JOSE SANTOS GOMEZ-SIMEON,**

  *Plaintiff*,

v.                                         Case No. SA-25-CV-01460-JKP

**PAMELA BONDI, ATTORNEY GENERAL OF THE UNITED STATES; REYNALDO CASTRO, WARDEN, SOUTH TEXAS ICE PROCESSING CENTER; SYLVESTER ORTEGA, FIELD OFFICE DIRECTOR, ICE; TODD LYONS, ACTING DIRECTOR OF ICE; AND KRISTI NOEM, SECRETARY, DEPARTMENT OF HOMELAND SECURITY;**

  *Defendants*.

### ORDER ON PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Jose Santos Gomez-Simeon's Petition for a Writ of Habeas Corpus and Complaint for Preliminary Injunctive Relief. *ECF No. 1*. After careful consideration, the Petition for Habeas Corpus is **GRANTED**.

### BACKGROUND

Gomez-Simeon is a citizen of Honduras and entered the United States in 2005 with a visa but overstayed his term. *ECF No. 1*. After a traffic stop, Gomez-Simeon was detained and removed to Honduras. Gomez-Simeon re-entered the United States. On November 26, 2012, an Immigration Judge granted Gomez-Simeon withholding of removal under the Convention Against Torture (CAT) based on a finding of well-founded fear of persecution and torture in

Honduras. Without proof otherwise, this CAT grant remains final and binding. Based upon this CAT grant, ICE released Gomez-Simeon under an Order of Supervision. Since his release, Gomez-Simeon resided in the United States for approximately twelve years without interruption. Under this Order of Supervision, Gomez-Simeon appeared at the required routine ICE check-ins, maintained a stable residence, and held employment with a valid Employment Authorization Document and a valid Social Security number. Gomez-Simeon owns a construction company.

Despite this compliance, ICE revoked Gomez-Simeon's Order of Supervision and detained him at a routine check-in at the ICE facility in San Antonio on October 22, 2025. *Id*. Gomez-Simeon remains detained at the ICE Detention Center in Pearsall, Texas. Respondents did not serve Gomez-Simeon or his counsel with notice of revocation prior to his detention, did not conduct an interview or comply with any of the revocation and custody-review procedures in 8 C.F.R. §§ 241.4 and 241.13.

In his Petition, Gomez-Simeon challenges the legality of his continued detention under § 1231(a)(6) because his removal is not reasonably foreseeable, and he asserts a constitutional challenge to his detention based upon lack of due process, specifically, ICE's failure to follow mandatory regulations governing revocation of a supervision order and custody review. Gomez-Simeon asserts ICE failed to provide a removal plan or explanation for his detention; he was never provided with an opportunity to present any evidence; he was never informed that his Order of Supervision (OSUP) had been revoked, and; he was not afforded an interview, advised of any reason for a presumed revocation, nor provided any explanation for a presumed decision of revocation. *ECF No. 1*.

Respondents contend Gomez-Simeon's detention is lawful under § 1231(a)(6) because they are "making efforts to attempt removal efforts to third countries including Mexico."[1] Respondents have not identified a country willing to accept Gomez-Simeon and have not provided him with a removal plan to demonstrate removal is significantly likely in the reasonably foreseeable future.

This Court stayed any anticipated removal during the pendency of determination of the pending habeas petition.

## LEGAL STANDARD

A habeas petitioner must show they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025). A habeas proceeding is civil in nature. Therefore, the petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Villanueva v. Tate*, 2025 WL 2774610, at *4 (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011), also citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

---

[1] While Gomez-Simeon may not be removed to Honduras under the CAT grant, he can be removed to a third country. 8 U.S.C. § 1231(b)(3); *Johnson v. Guzman Chavez*, 594 U.S. 523, 531–32 (2021).

## DISCUSSION[2]

Gomez-Simeon argues he is entitled to relief for two reasons: First, he argues his detention is illegal under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. Second, he argues Respondents failed to comply with their own regulations, a per se violation of procedural due process.

### I. Reasonable Foreseeability of Removal

The Government ordinarily, and may, secure a noncitizen's removal for ninety days following a final order for the person to be removed, and ordinarily does so with detention. *Zadvydas*, 533 U.S. at 682; 8 U.S.C. § 1231(a)(1). During this initial 90-day detention, the government must attempt to remove the noncitizen. 8 U.S.C. § 1231(a)(1); 8 C.F.R. § 241.4(g)(1)(ii). This 90-day removal period runs from the latest of the date the Order of Removal becomes final, the date on which a court-ordered stay of removal expires, or the date the noncitizen is released from detention. 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 241.4(g)(1)(i). Detention may be extended beyond the 90-day removal period if the noncitizen fails or refuses to apply in good faith for travel documents as directed by ICE. 8 C.F.R. § 241.4(g)(1)(i). Detention may also be extended if the noncitizen is inadmissible under 8 U.S.C. § 1182, if the noncitizen has committed certain crimes, and if the government determines that the noncitizen poses a risk to the community or is a flight rise. 8 U.S.C. § 1231(a)(6).

---

[2] In its analysis of the facts, issue, and arguments presented in this case, the Court notes close similarity to that presented in many recent cases asserting Petitions for Writ of Habeas Corpus filed in the Western and Southern Districts of Texas, and specifically, the San Antonio Division. The Court finds the reasoning in these similar cases persuasive and finds the ultimate determination based upon this reasoning correct. For that reason, and for the sake of expediency, the Court follows these opinions closely. *See, e.g.* 5:25-cv-00890-XR, *Puertas Mendoza v. Bondi, et al.*, 2025 WL 3142089, at *1 (W.D. Tex. Oct. 22, 2025); *Villanueva v. Tate*, No. CV 25-3364, 2025 WL 2774610, a *4 (S.D. Tex. Sept. 26, 2025).

Beyond the 90-day removal period, the Government may in some situations continue detaining a noncitizen for as long as is "reasonably necessary" to secure removal. *Zadvydas*, 533 U.S. at 699; 8 U.S.C. § 1231(a)(6). "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Zadvydas*, 533 U.S. at 699. Six months following the initial 90-day detention period is a "presumptively reasonable period of detention." *Id.* at 701. A noncitizen may not, consistent with the Due Process Clause, be detained indefinitely. *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001); *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *2 (S.D. Tex. Sept. 26, 2025).

The parties present two primary disputes about this six-month detention period discussed in *Zadvydas*. First, the parties dispute whether a detained person may challenge their detention under *Zadvydas* before expiration of the six-month period. Second, the parties disagree about when the six-month period begins running. Gomez-Simeon contends the six-month period begins when his removal period ended (here, in 2012/2013); Respondents contend the six-month period began when ICE detained Gomez-Simeon on October 22, 2025. Thus, Respondents contend Gomez-Simeon, and any person detained by ICE, may not challenge his detention on the basis that his removal is not "reasonably foreseeable" until he has been detained for the initial 90-day period and then following expiration of at least six months. *ECF No. 6 at 2-4*.

### A. Whether Expiration of the Six-Month Period is Required Before Detention May Be Challenged

*Zadvydas* determined only that the six-month detention period following the initial 90-days is a "presumptively reasonable period of detention." *Zadvydas*, 533 U.S. at 699. Consequently, this presumption is rebuttable. *Villanueva*, 2025 WL 2774610, at *10; *Zavvar v. Scott*, No. CV 25-2104, 2025 WL 2592543, at *5–6 (D. Md. Sept. 8, 2025) (collecting cases); *see Zadvydas*, 533 U.S. at 699-701. The six-month period is merely a "guide" to lower courts' de-

5

terminations whether removal is reasonably foreseeable. *Puertas-Mendoza v. Bondi, et al.,* 2025 WL 3142089, at *2, *Munoz-Saucedo v. Pittman*, No. CV 25-2258 (CPO), 2025 WL 1750346, at *6 (D.N.J. June 24, 2025) (quoting *Zadvydas*, 533 U.S. at 700–01). Importantly, *Zadvydas* unequivocally held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Zadvydas* 533 U.S. at 699–700; *accord Puertas-Mendoza,* 2025 WL 3142089, at *2-4, *Munoz-Saucedo*, 2025 WL 1750346, at *6.

While *Zadvydas* provides a rebuttable presumption of reasonability, it does not provide guidance on the present dispute whether the six-month period must expire before a detainee may challenge the reasonability of their detention. Courts are divided on this issue.

"Some courts have held that until the six-month *Zadvydas* period concludes, detention is *conclusively* reasonable—in other words, that during that period courts are precluded from inquiring at all into whether removal is reasonably foreseeable." *Medina v. Noem*, No. 25-CV-1768-ABA, 2025 WL 2306274, at *5 (D. Md. Aug. 11, 2025) (collecting cases); *see also Chance v. Napolitano*, 453 F.App'x 535, 2011 WL 6260210 (5th Cir. 2011) (non-published and non-precedential per curiam opinion affirming district court's finding that a challenge to post-removal detention was premature where *Zadvydas*'s six-month period had not passed); *Agyei-Kodie v. Holder*, 418 F. App'x 317, 2011 WL 891071, at *1 (5th Cir. Mar. 15, 2011) (same).

The Court concludes allowance of a detainee's challenge to the reasonability of their detention before the six-month period expires is a more reasonable and accurate interpretation of *Zadvydas*. The Court finds the rule created by *Zadvydas*, that is, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute," command against Respondents' position that six-month detention is required in every case. *See Puertas-Mendoza,* 2025 WL 3142089, at *2-4, *Munoz-Saucedo*, 2025 WL 1750346, at

6

*6; *Villanueva*, 2025 WL 2774610, at *10; *Zavvar v. Scott*, No. CV 25-2104, 2025 WL 2592543, at *5–6. *Zadvydas* did make clear that it adopted a *presumption*—not a *conclusive bar* to adjudication of the issue whether continued detention is authorized that lifts only after six months have elapsed. *Zadvydas*, 533 U.S. at 699–700. This same conclusion and interpretation of *Zadvydas* is prevalent in recent opinions presented with this issue under the same facts presented here. *See Puertas-Mendoza,* 2025 WL 3142089, at *2-4; *Munoz-Saucedo*, 2025 WL 1750346, at *6; *Villanueva*, 2025 WL 2774610, at *10; *Zavvar v. Scott*, No. CV 25-2104, 2025 WL 2592543, at *5–6. The Court similarly concludes, "[a]lthough the Supreme Court established a six-month period of presumptively reasonable detention, it did not preclude a detainee from challenging the reasonableness of his detention before such time." *Munoz-Saucedo v. Pittman*, 2025 WL 1750346 at *5; *Cruz Medina v. Noem*, No. 25-CV-1768, 2025 WL 2306274, at *6 (D. Md. Aug. 11, 2025); *Puertas-Mendoza,* 2025 WL 3142089, at *2-4.

### B. When the Six-Month Period Begins

Gomez-Simeon contends the six-month period started running in 2013, immediately after his initial 90-day removal period ended. Respondents contend the six-month period did not begin running until Gomez-Simeon was detained on October 22, 2025. Given the Court's previous conclusion, this question seems superfluous. However, determination of when the six-month period begins directs what standard of proof Gomez-Simeon must satisfy to show his confinement is unreasonable.

A detained person who brings a challenge to their confinement before the presumptively reasonable six-month period runs must prove "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 699–701; *Cruz Medina*, 2025 WL 2306274, at *6 (quoting *Munoz-Saucedo*, 2025 WL 1750346, at *6). After the six-month period

runs, a detained noncitizen need only "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. If they do so, "the Government must respond with evidence sufficient to rebut that showing." *Id.*

Gomez-Simeon contends he need only provide good reason to believe his removal is not foreseeable. Following Respondents' argument, Gomez-Simeon would need to satisfy the more difficult standard.

*Zadvydas* is not clear on this specific issue because there, the petitioners were not released after their removal period. *Zadvydas,* 533 U.S. at 684–86. *Zadvydas* has been interpreted to suggest "there is, at a minimum, a reasonable argument that the six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period." *Zavvar*, 2025 WL 2592543, at *4 (collecting cases); *Puertas-Mendoza,* 2025 WL 3142089, at *3. In any event, the Court need not decide the issue because, following analysis under the more difficult standard, the Court finds Gomez-Simeon is entitled to relief.

**C. Application**

Gomez-Simeon provides sufficient showing through the circumstances of his detention and the undisputed facts that there is no significant likelihood of his removal in the reasonably foreseeable future.

It is not disputed that Respondents have not sought to remove Gomez-Simeon since 2012 following his CAT grant. It is also undisputed that Respondents have not found a country to take him at this time. Further, even if Respondents find a country to accept Gomez-Simeon, as a CAT recipient, Respondents must provide a new reasonable-fear process prior to his removal. Under 8 C.F.R. §§ 208.31(a)–(c) and 1208.31(a)–(c), when a person with a reinstated removal order expresses a fear of persecution or torture in "the country of removal," the individual must undergo a reasonable-fear interview with an asylum officer. This process provides there is no significant

likelihood of Gomez-Simeon's removal in the reasonably foreseeable future. Respondents have not provided Gomez-Simeon with any justification for his most recent detention. *See* ECF No. 6-1 (affidavit dated November 20, 2025). Respondents provide only a conclusory justification, stating, ICE is "making efforts to remove the petitioner to a third-party country including Mexico." *ECF No. 6-1*.

Taken together, the long period of time between Gomez-Simeon's Order of Supervision under CAT, the time of his detention with no removal plan, the lack of any explanation for Gomez-Simeon's detention in 2025, the failure to provide any removal plan, and the cursory explanation demonstrate no substantial likelihood that Gomez-Simeon's removal is reasonably foreseeable. *Accord Puertas-Mendoza,* 2025 WL 3142089, at *2-4 (granting habeas petition finding no substantial likelihood the petitioner's was reasonably foreseeable under substantially similar factual circumstances); *Villanueva*, 2025 WL 2774610, at *10 (granting petition for writ of habeas corpus based on *Zadvydas* where detainee had withholding of removal, the Government had not initiated proceedings to lift the order to withhold removal, the Government had failed to remove him for eight years following his order of removal, and there was no evidence that circumstances had changed to make removal reasonably foreseeable).

Thus, the Court concludes Gomez-Simeon's release is required. *See Zadvydas*, 533 U.S. at 699; Puerta

## II. Procedural Due Process

Gomez-Simeon contends he is also entitled to habeas relief because ICE deprived him of procedural due process by failing to comply with their own regulations. Gomez-Simeon contends that because "his removal is not reasonably foreseeable, detention cannot be reasonably related to the purpose of effectuating removal and thus violates due process. *See Zadvydas*, 533 U.S. at 690, 699–700.

9

Upon revoking someone's release, ICE must notify the person of the reasons for revocation. 8 C.F.R. 241.13(i)(3). ICE also must "conduct an initial informal interview promptly after" the detained person's return to custody "to afford [them] an opportunity to respond to the reasons for revocation stated in the notification." *Id.*

It is undisputed ICE did not provide Gomez-Simeon any reason for his detention upon his 2025 detention, ICE has not revoked Gomez-Simeon's original status under the CAT grant, and ICE did not conduct an initial informal interview promptly after the detention to inform Gomez-Simeon an opportunity to respond to any revocation.

To establish a procedural due process violation, a habeas petitioner must show he was deprived of liberty without adequate safeguards. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Again, the Fifth Circuit has not provided guidance to lower courts, on the appropriate standard for reviewing a procedural due process challenge alleged by a noncitizen detained under § 1231.

Under distinguishable facts, the Fifth Circuit has held "[t]he failure of an agency to follow its own regulations is not, however, a per se denial of due process unless the regulation is required by the constitution or a statute." *Arzanipour v. I.N.S.*, 866 F.2d 743, 746 (5th Cir. 1989). Violation of a regulation not required by the Constitution or a statute constitutes a denial of procedural due process if the claimant shows "substantial prejudice" arising from the violation. *Francois v. Garland*, 120 F.4th 459, 465 (5th Cir. 2024) (quoting *Arzanipour*, 866 F.2d at 746).

Here, Gomez-Simeon argues per se denial of procedural due process based only upon the fact there is no significant likelihood of removal in the reasonably foreseeable future. The Court finds neither party meaningfully briefed whether: (1) the relevant regulations are required by the Constitution or a statute, or (2) Gomez-Simeon shows substantial prejudice.

Because Gomez-Simeon is entitled to habeas relief, the Court will not address the issues presented in any procedural due process challenge.

### III.    Attorney Fees

Gomez-Simeon requests attorney fees under the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412(d)(1)(A). Because recovery of attorney fees under the EAJA are not available in habeas corpus proceedings, the Court must deny this request. *Barco v. Witte*, 65 F.4th 782. (5th Cir. 2023).

### CONCLUSION

For the foregoing reasons, the Petition for Habeas Corpus (ECF No. 1) is **GRANTED**. It is **ORDERED**:

1.    Respondents are **DIRECTED** to **RELEASE** Petitioner Jose Santos Gomez-Simeon from custody, under appropriate conditions of release, to a public place by **no later than 12:00 p.m. on November 26, 2025.**

2.    Respondents must **NOTIFY** Gomez-Simeon's counsel of the exact location and exact time of his release as soon as practicable and **no less than two hours before his release;**

3.    Any possible or anticipated removal or transfer of Gomez-Simeon under this present detention is **PROHIBITED**.

4.    The Motion for Temporary Restraining Order (*ECF No. 8*) is **DENIED AS MOOT**;

5.    The parties shall **FILE** a Joint Status report **no later than 6:00 p.m. November 26, 2025**, confirming Gomez-Simeon has been released.

A final judgment will issue separately.

It is so ORDERED.
SIGNED this 24th day of November, 2025.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE